Good morning, Your Honor. May it please the Court, Timothy Scott for the appellant, Jose Luis Cardenas. We're asking that these convictions be reversed for three reasons. First, Mr. Cardenas was seized by Border Patrol in the absence of reasonable suspicion to do so. Secondly, in the 1326 prosecution, Mr. Cardenas was prevented from putting on evidence that was designed to put the government to their burden on the element of alienage. And finally, at a later identity theft trial, Mr. Cardenas was convicted only after the charges in the indictment were broadened and the indictment itself was constructively amended, and also after the prosecutor made factual misstatements that amounted to misconduct in closing argument. As to the Fourth Amendment issue, the test for whether something is a consensual encounter versus a seizure is whether, under the circumstances, a reasonable person would have felt free to ignore the officer, to ignore them, and to go about their business. And the argument in this case boils down to, on these facts, no reasonable person under the circumstances would have felt that they could have ignored this Border Patrol officer and gone along their way. The officer acknowledged on cross-examination that there was no preparatory statements, there was no introductions, so to speak. There was nothing in the spirit of, do you mind if I talk to you, or can I ask you a few questions, or anything of that nature. This was not a situation where the defendant was asked if he would have an encounter with the officer. Rather, the officer was fully armed, was dressed in full uniform with gun belt and holster, pulled up either behind or next to, depending on which version of events you, or which portion of the agent's memory you rely on, but was confronted. He said, Border Patrol, and then the Border Patrol agent launched into a series of questions about citizenship, identity, which hospital he was born at, what city he was born at, whether he had criminal history. Context is everything, of course. In this context, a Hispanic gentleman out in Pine Valley, California, being confronted as his car is broken down, being confronted by a Border Patrol agent, I don't think it's fair to say that that person could have felt that he was in a position to just wander off or to ignore the agent and go about his business. To the contrary, I think the only fair reading is that a person would have felt that they were required to answer these questions because it was put to them under color of authority by a fully dressed and armed Border Patrol agent. And in fact, in a somewhat, I would submit, unique or rare admission, the agent actually admitted, both on direct and cross-examination, that he specifically told the defendant, if you have your ID and if everything checks out, then you are free to go. Now, the argument, and I want to be clear, is not that in speaking those words, he then converted a consensual encounter to a seizure, but rather those words describe what had been going on, what both parties understood all along. You don't tell someone you'll be free to go after this if they've been free to go the whole time. That's contrary to reason, and I don't think that that ought to be the law in this case. The government has abandoned the argument that reasonable suspicion supported the stop. They're relying entirely on consent. And on the facts of this case, the court should hold that it was a seizure instead. What came of the encounter? The fruit that we're trying to suppress is that he actually spoke the words, my name is either, again, Martinez or Martinez Cascada, depending on which version of testimony you believe. But the words that he spoke formed the basis of the government's 1028A prosecution. So what I'm arguing should have been suppressed is the fruit of the encounter, the words that he spoke back to the officer. I mean, normally when we suppress, we're suppressing evidence. Here, it's the crime itself. I've never heard of suppressing the crime itself. It doesn't matter whether they're true or not. He doesn't confess to anything. So this is not really evidence. What happens is he has an encounter, which might be consensual or not. And we can talk about that. But does the fact that, let's say, if the encounter were nonconsensual, and let's say at that point he pulls out a weapon and shoots the officer, attempts to shoot the officer, does that get suppressed? Not, I wouldn't think that the act of shooting. Well, let's say he doesn't succeed in wounding the officer, but let's say he, you know, as they're having this chat, consensual or not, he goes for a gun. I mean, he reaches for a weapon, but the officer is very fast on his feet and, you know, draws first or, you know, somehow avoids any actual danger, but it's, you know, the guy misses. He reaches for a gun, but, you know, doesn't make it. In any way that actually threatens the officer, doesn't cause any wound or anything like that, but it's clear that what he did, and it's clear because we have a photograph of it or a video, right? So we can – does that get suppressed? I don't understand how you can suppress a crime as opposed to suppressing evidence. I think in – to answer the hypothetical about going for the gun, I would suspect that the government would have a stronger argument that, strictly speaking, that's not fruit of the seizure and the questioning. I think that that hypothetical is distinguishable from a situation where there are specific questions that are put to the defendant in the course of this seizure. Isn't the government, the Supreme Court, told recently, relatively recently, that a police officer is entitled to ask for identification and to ask someone's name on the street? And that doesn't even rise to the level of a Terry Starr. Alone, perhaps alone, that's not a seizure in and of itself, but under the totality of the circumstances. So if it's not a seizure, then it doesn't matter. I mean, let's say after he asks for his name, the officer proceeds to beat him. It doesn't have any effect on the – I mean, maybe, you know, or puts him in handcuffs or decides to pat him down and, you know, do a body cavity. You know, we can imagine also saying the officer does, but if the very thing that he does is not a seizure, how can we suppress it? Standing alone, it may not be a seizure, simply to ask the name alone or simply to ask for identification alone. He gives the answer. So, you know, at that point he's committed the crime. What does it matter if something else is a seizure? Well, for one thing – Or if the crime is committed in the midst of a seizure. Because it's in the context. And the record's not clear as to whether he asked the name first or whether he asked the name last. Well, you assume whichever one you want. Okay. Assume he did it first. Assume he did it last. I don't see how it helps you. Well, if it's last. Let's say there is an illegal seizure, right? And during that seizure, the officer asks something that is not a seizure. You know, ask something he's entitled to ask regardless of the seizure. And your client answers. We can suppress a seizure, but we can't suppress a non-seizure. You can suppress the fruit of the seizure. The position is answers are given in the context of an unlawful seizure and questioning. So if he's compelled to be there and he's answering questions that are put to him while he's being seized unlawfully, then those answers are fruit. They're directly fruit of the poisonous tree. They're not fruit. They are actually the crime itself. You've used over half your time, and you've got a lot of other issues. Do you want to get to any of the others? I would be happy to. The second issue goes to the 1326 trial. And the defense to the 1326 charge was that the government's A file, by and large, pertained to a different person. The government had proof of alienage for a gentleman named Alfonso Pio Quinto and had a certificate of no record and had all of the traditional A file documents pertaining to Alfonso Pio Quinto. The defense at trial to that was the defendant wasn't Alfonso Pio Quinto. What the facts revealed was that when he was young, he was not old enough to work, and so he assumed the identity of this Mexican citizen, Alfonso Pio Quinto, to allow himself to work to avoid, I suppose, child labor laws. So the argument basically is to the jury, well, the government has proven that Alfonso Pio Quinto is Mexican, he's not a citizen of the U.S., but that's not the same thing as proving that the client is a Mexican citizen. The district court allowed that evidence in in the first trial and it hung. In the second trial, that evidence... Who did he claim to be at that point? Carlos Martinez was the name that was given. That's what he was originally identified as. The same guy that he is now charged with having, then he winds up... Correct. Correct. Correct. And so the argument was you've proved that someone else is a citizen of Mexico. Now, alienage is an element of the offense. The government bears that burden and the defense is entitled to put the government to that burden, and in precluding this evidence at the second trial, the defendant was prevented from putting the government to their burden in this manner. It was a meritorious defense to say you have not proved that the person on trial is a Mexican citizen. You have proved only that Alfonso Pio Quinto is a Mexican citizen. Now, that's a question for fact. Maybe the jury agrees with that. Maybe the jury does not think there's reasonable doubt there, but that's something that the jury is entitled to make a decision about, and by precluding that defense,  and that is a structural type error that should lead to reversal. But they hung on that. In the first trial, and then the rules of the game changed. In the first trial, it hung when that evidence was permitted to come in. So after it hung, it was set for retrial, and before the retrial, the government filed motions moving to preclude that type of evidence, and the district court granted the motions that time around. And so for the second trial, that was not available. Mr. Cardenas was precluded for putting on that kind of evidence, and after the defense had been gutted, so to speak, he simply preserved the issue, the district court. He said, Your Honor, you're precluding me from putting on my defense. I object under the Fifth and Sixth Amendments. The district court said your objection is preserved, and then they simply stipulated as to what the government's agents would say and put the matter to a bench trial to preserve the record for appeal. So it's not accurate to say that it hung. Those things were precluded after the retrial, and he was convicted. But you're not really complaining what happened in the first trial, right? You're complaining about the preclusion in the second trial. Correct. Yeah, these things weren't precluded in the first trial. And, in fact, what happened in the first trial— Whether they were or not, it doesn't matter. The jury hung, so there's no consequence of it, right? It matters only to the extent that it demonstrates that this was a viable defense. Well, it demonstrates prejudice, don't you think? That's the point. That's what I'm saying. It shows that, thank you, that with this kind of evidence, it's a viable defense in front of the jury and would have mattered, would have made a difference. The next point I have has to do not with the 1326 trial, but with a separate identity theft trial. These counts were severed, and he stood trial on identity theft because of the fact that the government charged him with speaking the name Carlos Jesus Martinez to Border Patrol on the date of his seizure back in July of 2007. There was some confusion about what exactly the government was charging, because 1028A is a relatively new statute. There are ex post facto concerns with going back too far in time to apply it to the offense conduct. And there's also a variety of what the government described as inextricably intertwined acts or other bad acts type evidence. We moved to either for bill of particulars or to dismiss for vagueness and tried to pin down what the government said he did to break the law. And what the government said was he said the name Carlos Jesus Martinez. Now, what the evidence at trial demonstrated is that the agent's report- They said that was the charge that he used the name Carlos Martinez. Correct. And they said that was what the indictment meant, and that was the act they were going to prove. The act of orally speaking the name Carlos Jesus Martinez. At a pretrial motion hearing, they committed on the record that that is what he said. The evidence showed that he said the name Martinez Cascada. Now, the agent sort of backed off on that a little and said, well, my memory today is that it's Martinez, but my report is accurate. I did it two days after the events took place. I have no reason to think that's incorrect. And so what we had was the charges being Martinez, but the evidence showing Martinez Cascada. Now, the problem arises because the grand jury never handed down an indictment on the action of saying Martinez Cascada. And the jury was permitted in jury instructions and, in fact, encouraged by the prosecutor in closing arguments to convict under either theory. So they were- A question I've had about this that bothers me is, as to any of the names, isn't the government required to prove that your client-I'm going to call him Cardenas. I'm assuming that's his real name. Right. That he knew that the person whose name he gave was a real person under Flores Figueroa. Right. And at the trial, I mean, I know they tried to say Martinez Cruz, who showed up, was Carlos Jesus Martinez, but I didn't see that they ever proved the element that Cardenas knew that any of them was a real person. I wish I could stand here and say that they didn't prove that, but the truth is they did. I mean, they did show- Okay, as to Martinez Cascada- Not as to Martinez Cascada. Because only Martinez Cruz showed up and testified that his name was Martinez Cruz and his date of birth was September 13 or something. Right. So, okay, he was a real person, so maybe they proved that Cardenas knew he was a real person. But Martinez Cascada, for all I know, doesn't really exist. He doesn't exist. He does not. And, in fact, I called an investigator to testify that she ran a variety of records checks under the name Martinez Cascada and looked high and low and used all the databases and traditional means to- Aren't they missing an element of the offense as to Martinez Cascada? If we're proceeding on the theory that Martinez Cascada can fit the bill, so to speak, that that could result in conviction- Well, didn't they tell the jury that Martinez Cascada could fit the bill? The argument, as I understood it, was- Was either or. Yeah. The argument, as I understood it, was, A, he really probably said Martinez because that's what our agent remembers today. But, B, even if he said Martinez Cascada, that could still relate to the person who came to court, Martinez, the person without the hyphenated surname. But the court is right. If the question is, is there a real person named Martinez Cascada and did the defendant know that, the answer to both those questions is, no, there is no such person. That's what the testimony of the prosecutor- The birthdate was pertained to this real-life person, right? The birthdate was the same. And we're talking about count two of the superseding indictment? Yes. Can we look at it together? I believe so. Do you have the money? I do. Which page of the AR, Your Honor? It should be towards the back, I suppose. I have it, Your Honor. Page 648. That's count two, right? Page two of the indictment? Yes. Yes, I have it. Page 648 of the ER. It looks like a standalone second superseding indictment. I'm sorry, there's a second superseding indictment? Yes, I'm looking at page 648 of the ER. Okay, I'm sorry. All right, let's look at that. That's in volume three of the appellant's excerpt of records, ER 648. It says 658 is the indictment superseding. Oh, you're talking about the- Yeah, second superseding indictment. Second superseding. Page 648. So it says, all about this case, right? The defendant knowingly possessed and used without law authority a means of identification of another person. So what he charges is using a means of identifying another person to with the name and date of birth of Carlos Jesus Martinez. Right. So what he charges is using the name and birth date of this specifically identified person. Right. And as I understand your argument is that office says, well, what he gave me was Carlos Martinez Cascada. Correct. And he does a search and doesn't come up with anything, but then eventually comes up with Carlos Jesus Martinez's name because he uses Martinez and that particular birth date. Presumably, yes. Well, that's the information you have, right? Right. And that turns out to be somebody that the defendant actually knows. Right. I mean, this is not some stranger. This is somebody- So I'm trying to understand why you think this belongs in the indictment and how it changes anything. It's the indictment in conjunction with the pretrial representations because I asked the government and filed motions to try to learn exactly what it is, what conduct it is that the government alleges violated this indictment or violated the statute and was charged in the indictment. Right. Because- Well, right. The reason I ask the question is that there were a number of different acts that the government had provided in discovery. There was going to the county recorder's office and getting a birth certificate in the name of Mr. Martinez. There was using driver's licenses, all on different dates, most of which was barred by ex post facto concerns or many of which, or else the government had a problem that it wasn't in furtherance of one of the enumerated offenses under 1028A. So my question was, what do you say he did, essentially? And what we were told on the record was he spoke the name orally, Carlos Jesus Martinez. And so I relied on that. And I took that representation at face value, and I built the case around it. And the case was the government has charged him with saying Carlos Jesus Martinez, but that's not what he said. He said Martinez Cascada, and he did it because he knew he had a record under this other name,  I agree with the argument of the jury that that's not enough. That he's spoken the wrong name. But I don't understand how this, I don't understand the argument that this somehow broadens or varies the indictment. What they charge him with is using a means of identifying himself as this individual. And they correctly identify the individual whose identity was stolen. There's no doubt about that. There's not some other person. So the record, they brought the guy into court and said, yes, that's me. It's a real living, breathing human being. The question is, did he do something on that day that identified him, that caused the police to believe he is this other guy? And that was for the jury to decide, right? For the trial to decide. He said things. It wasn't exactly the name, but it was close to the name and the birthdate. And the jury thought it was fine. It was close enough. He identified himself. Yeah, the response to that is that they're broadening the potential avenues of conviction in that manner is not permitted under the precedent. Well, the crime is misrepresenting himself as this individual. They didn't change the individual that he misrepresented himself as. It was simply the proof that he misrepresented himself that changed a little bit from what was expected. But how is that misrepresented throughout the entire indictment? Because it's providing two different, a menu really, two different ways to convict when only one was charged. And when pretrial. No, because the crime, the thing he's charged with is claiming to be this other guy. Right. Well, that's the crime. That's the indictment. They don't have to, in the indictment, put out all the ways they can prove it. I've never seen an indictment that puts out all the evidence that the government would use to convict somebody of the crime. All you're entitled to is notice of what the crime is. Right. And the notice was that he gave this one specific name, but in a trial they were able to pursue the two. It doesn't say that. It says that he claimed to be this guy. It does not say that the proof will be this specific name. What I'm relying on. You could identify yourself as being that guy by saying, you know, it was a tall man with a goatee, you know, with a blue tie. So you have a fairly accurate description of who you are. And, you know, with a particular birthday and so on. They would use your name and somebody could pass themselves off as you, right? Right. And it would be a different situation if I was relying only on the indictment. But my argument is coupling the way that it was charged and then the government's responses. Well, the argument is very simple. You asked for a bill of particulars and they told you what the indictment meant. Exactly. And they said the charges are that on that date defendant gave the name that is alleged in the indictment to the officer. Orally spoke that name. Orally. And that is the offense. And they said, right. Right. That is the offense. He said it was the U.S. attorney said you had accurately recited what the charge is. And the charge was that he gave the name of Martinez or whatever was its charge in the indictment. Right. So you filed the bill of particulars? Yes. And this is what resulted from it. I filed a. You got something in writing? I got something in writing. I, in the sense that it was on the record, I have the transcript of it. Yes. What the court just read, what Judge Reinhart just read was the government's representation at the motion hearing. So you said it was a representation to you and to the court. Yes. That the charges were that he gave the name in the indictment to the officer. Yes. And that's not what happened. Right. So my argument isn't simply the indictment wasn't what came out of trial. My argument is what was represented pretrial in response to my motion for bill of particulars. And in response to my motion to figure out what the charge was. Assuming that's the case, when does varying something in a bill of particulars, how does that become an objection indictment? Well, I think it's the Adamson case. There's detrimental reliance when pretrial representations clarify or describe. I did have evidence that that's the name he used because the officer said so. The officer said his memory today is Martinez, but he admitted that his report is no doubt what was accurate. He sort of tried to play it both ways a little bit. But there was a situation where the government misled you. Well, they did have evidence that supported what they told you. Correct. I guess the argument is, had they indicted on Martinez-Cascada, I would have a less strong argument today. I would have less to complain about. But there's no person. There's no person. There would be no. If they had indicted on Martinez-Cascada, then you would have had the indictment dismissed because they couldn't meet an element of the crime. Precisely. So they indict on Martinez. But I guess I can't find it in here, but I think the problem is, and you can tell me if this is what it is, in the end, the jury was told they could convict him whether it was Martinez-Cruz or Martinez-Cascada. But it didn't make any difference. They could convict on either one. That's right. And just to follow me, so what the problem is, and I don't know if constructive amendment is the correct thing, but the problem is that the jury could have convicted him of a non-crime. Right. Given the instruction that was given to the, and we don't know that it didn't. Right. It's one of those situations where you can't, the government can't say, well, error is harmless, because there's really no way to tell which way the jury went. The citations that the court is looking for are at ER 151 to 155. There's a collection of the government presenting this alternative, and there's more. And the judge said it, too, right? The judge said you can convict under either name. Right. The court. And what really bothers me about it is that, you know, just because Hispanic names are, I mean, it could be Martinez or, you know, I mean, the way Mexican names in particular are, it's the father's name and the mother's name. Right. Martinez isn't enough. Right. It's the matronomica, I think the term is. Martinez-Cascada means your father is Martinez and your mother is Cascada. And I, in fact, asked. So these are different people. They're different people. I asked Mr. Martinez, Martinez-Cascada, that's not you. He said, no, that's not your identity. No, that's somebody else. Yes. I see that my time has elapsed. Thank you, Your Honor. That's a jury-structured problem. That's not an indictment. Yeah, I'm not seeing it as a construct. I mean, I think we're under the wrong rubric. Well, I think it's, at a minimum, it's a fatal variance. If the court's not persuaded that the indictment was broadened, then at a minimum, the pretrial representations were broadened. And that, I think, falls squarely into the rubric of a constructive, or excuse me, of fatal variance. But it was exacerbated, at a minimum, by the jury instructions that were handed down. But you don't complain about the jury instructions and the variance. Well, I do. You talk about variance. There's no argument that. I did note that the instructions that I proposed were rejected. And I also, it was one of the sub-arguments under the rubric that this was broadened, is that the court's instructions impermissibly broadened it. And so I did include that as an argument for why this was legal error. It was a sub-argument under the rubric that I had proposed. My position was that the court, by rejecting my instructions and by giving the instruction that it gave, including an on or about instruction, which was particularly problematic since there was other bad acts, conduct within the very same month of the arrest, and giving that on or about instruction directly after the elements of the offense, that furthered the harm that took place. Was the indictment said on or about? Correct. But there was no question. Everyone agreed it was July 17th. There was no reason to give that because there was no dispute. Well, the government said in response to your motion for whatever it was, specifications, they said it was on July 17th. Right. He gave his name to the cop. And that was the charge, they said. Right. That is the offense. Okay. Thank you, Your Honors. Okay. We'll hear from the government. May it please the Court, George Hardy for the United States. Good afternoon. I had a plan of attack to address the issues in order, but I think I need to go straight to the constructive amendment argument and correct what appears to be a misconception here. The government's theory in the indictment at trial, in the argument was always that the defendant used the identity of a person, a real person, who testified as a victim, and his name was Carlos Martinez. That's not what he said. Is it in answer to the motion for specification or whatever of the indictment? The pre-trial motion when you represented to the Court that the charges that on July 17th, the defendant gave the name that is alleged in the indictment? That's correct. That was the government's theory. What name was alleged in the indictment? I'm sorry? What name was alleged in the indictment? Carlos Jesus Martinez. Okay. And your charge is that he gave that name? That name on that day.  And that is the offense? And that was the government's theory from beginning to end. Okay. And if he didn't give that name to the cop, then he wasn't guilty? He wasn't guilty. There may have been a Rule 29. He could have argued against it. It's not a variance. It's not a constructive amendment. Well, the variance is not. That's the offense. The offense is that he gave the name Carlos… Jesus Martinez. Jesus Martinez. Correct. And not Carlos Martinez Corrado or whatever it is. Cascada, exactly. Okay. The government never charged that, never wanted to prove that, never argued that, and the Court never instructed that. It was very, very clear in this trial what the government's theory was, what it had to argue, and what the elements were. The question is, did he give that name? If he gave that name, he's guilty. If he didn't give that name, he's not guilty. That's correct. I agree. But that's not the issue here before the Court, Your Honor. Judge Reinhart, the issue is whether or not there was a constructive amendment to the indictment or a fatal variance. It's more than that. Well, that's the issue that I was addressing. Sorry. Okay. But whatever the issue is here, the issue at trial was did he give that name? That's correct. Okay. And the only evidence is he denies it and the officer says… What did the officer say? The officer gave testimony that was, as the district court described, equivocal. He testified that when he asked for the gentleman's name, the defendant said Martinez without any hyphenation. Then, looking at his report, he said, yes, my report says Martinez Cascada. Yeah. So there was a conflict. There's no doubt about it. There was a conflict in his testimony. There was no conflict about whether or not he used the birth date. No, but not the birth date. I'm talking about the name. And the name, the officer testified, he was asked, you are not suggesting that the name given to you was something other than Martinez Cascada, are you? Are you remembering it differently? No, I'm not remembering it differently. Your Honor, that's one piece of the transcript. And I could go back to other pieces of the transcript. Where the agent is saying, no, my memory is that it was Martinez. He said, my memory currently is it's Martinez. Then he's asked, are you suggesting that the name given to you was something other than Martinez Cascada? Are you remembering it differently? No, I'm not remembering it differently. That's correct. There was a conflict in the testimony. In his testimony. In his testimony. And that was something the defense could argue to the jury. Absolutely. The government did not prove this charge. That's not a constructive amendment or a fatal variance argument. So, all right. So the issue then is, did he not use the name Martinez Cascada when the officer said, again, it was stated to you, according to your report, Martinez Cascada, according to the report, yes. Which you have no reason to doubt, right? No reason to doubt that. Your Honor, if I might, the issue is whether or not. Based on the argument of counsel, the evidence of trial, and the instructions of the court to the jury, whether or not the jury could have convicted the defendant in this case for using the identity of Mr. of a non, of a non-person. Mr. Martinez Cascada. I'm saying to the cop on that day, as you, the government, explained the charges, what it is. It's that he said to the cop that day, my name is Martinez, whatever it is, without the Cascada. That was how the government described it. He did not say something Cascada. The government never denied what the evidence was, Your Honor. Obviously, when the evidence came in. How could you put the cop on the stand? I'm sorry? How could you put the cop on the stand to say he said something that he knew wasn't correct? Your Honor. He said on cross-examination. He knew that wasn't the name. Because he, there was a, he had written a report. Yeah, and he says that. He had no reason to believe that he had done something incorrect, but his memory was different. This happens all the time in trials, Your Honor. Well, that's not what he said. His memory was different. He said his memory, at the time he was asked the question, was that the defendant said Martinez. His report said Martinez Cascada. All right. The defense had a good argument that we have improved our case. No doubt about that. I think you've had a problem because you've indicted him on Martinez, but the police, the agent's report had a different name. And that was a problem. So you had to somehow oblige that. Obviously, we understood that to be the fact, given all the other evidence we had of Mr. Cardenas using the identity of Mr. Martinez on prior occasions. He walks into the DMV with a birth certificate. But you represented to the court that it was just this one day, not these prior occasions. That's correct. The allegation in the indictment, the evidence and the argument was that this defendant, Mr. Cardenas, used the means of identification of another person. The means of identification would have been the name. But that's not what you said when they asked for clarification of the indictment. You said the charge is that that's the name he told the officer. That's what you represented to the court and the opposing counsel. And the evidence was equivocal. It wasn't equivocal. The officer said, no, I'm not remembering it differently than what I put in the report. At one point in the transcript, that's what he said. But in another point in the transcript, he said don't you think that somebody should have talked to the officer before the trial and asked what he really remembered? I don't understand how anybody would put on a witness like that who you can get to say on direct, well, I think I remember it now this way. But then says on cross, no, I really don't remember it that way. I put it in the book, and that's what his real name was. That's what he told me. Your Honor, with respect, I think on a daily basis, defense attorneys are able to use reports of agents to cross-examine agents about discrepancies. What we ask on direct is what is your memory? And if the report contradicts that memory, that's great for the defense. But that doesn't mean we're going to do that. He said on cross it wasn't his memory. Now, you know, either it was or it wasn't his memory. Doesn't the government have an obligation to find out before they put a witness on the stand what his memory really is? Your Honor, there was no doubt in our minds whatsoever that Mr. Cardenas was trying to use the identity of this gentleman. No, I'm not talking about whether he was trying to use the identity. I'm just talking about the issue you say is the issue. What name did he give? And I don't think it would have been very hard to find out from your witness what he really remembered. Well, I wasn't a trial attorney, so I can't answer. But I've been in trials. I don't know how this affects the outcome of the trial, but I must say it certainly is a shabby performance by the government. Well, I'm sorry you feel that way, because I respectfully disagree. I think the evidence was right out there for the jury to see. The defense had what they had to cross-examine, and they made the best of it. The issue that I've been trying to argue is whether or not this was a constructive amendment or fatal variance, and I suggest to the Court that it was neither. Hitting two of the other issues real quickly, and I want to set the stage a little bit here. When the defendant was first arrested, we thought he was Alfonso Pio Quinto. Obviously. Correct. He was charged with that name. Because you tried him under one name in one trial and another name in another trial. We thought he was Alfonso Pio Quinto. He comes in and he says, no, I'm Carlos Martinez. In the first trial, evidence is put on by the defense that he's Carlos Martinez, all of which we know now is a lie, is wrong. He's not Carlos Martinez. There's a hung jury. Thereafter, a motion in limine is brought to preclude the evidence that he is not Pio Quinto. The government doesn't believe he's Pio Quinto anymore. We understand that he's not Pio Quinto. We've learned that he's Mr. Cardenas. So all of that evidence that he's not Mr. Pio Quinto becomes irrelevant, and that's what was thrown out. And after that, then, there wasn't a jury trial. There was a stipulated facts trial in which the defendant admitted that he – evidence was introduced in which he acknowledged – I'm sorry. Let me restate that. Evidence was introduced of a statement he made acknowledging his alienage. So that was how the evidence proved that he was an alien. So the defendant's argument here that he was denied his right to challenge the evidence supporting his alienage is refuted by the fact that it was simply his statement that came in as a stipulated fact during the trial. On the issue of consensual search and whether or not the district court erred when it denied the motion to dismiss, finding a consensual encounter, the district court conducted a full evidentiary hearing, hearing the witnesses, and came to the conclusion as a matter of fact that there was no coercive language, no coercive steps taken by the officers to take this into the realm of a type of encounter which would implicate the Fourth Amendment. Therefore, the motion was denied. The only evidence that the defendant points to that there was some coercive effect, really, is the statement, don't – if your ID checks out, we'll let you go afterwards. Well, the ID didn't check out. He never got the ID when he drove him to the trailer, and he still let him go. So the whole effort was consensual. There was no reason to suppress anything, and I agree with Judge Kaczynski that it's kind of hard to suppress the crime, which was the use of the – Can I just go back to – I think the thing that troubles me the most on the identity case is that you argued to the jury, and I think the court instructed, I'm not quite sure, that they could convict him whether he had used the name Carlos Martinez Cascada or whether he had used the name Carlos Jesus Martinez. And we know Carlos Martinez Cascada doesn't exist. So he's not guilty if they found that he gave that name. He's only guilty if they found that he gave the name Carlos Jesus Martinez and they believe that Martinez Cruz is the Martinez referred to, okay? So how do we know that the jury didn't convict him of a non-crime? Okay. First of all, I don't think – Indictment. That's where we can sort of put it in the rubric of fatal variance or whatever. I don't think it's a fair description of the record that the government argued to the jury that they could convict him if you conclude that the defendant used the name Cascada, Martinez Cascada. Didn't you not argue that Carlos Martinez Cascada was a means of identification of Carlos Martinez? I think the way the argument went was that it really doesn't matter too much whether or not you believe he actually used Martinez Cascada or Martinez alone because the evidence shows Mr. Cardenas has used various sort of tweaks of the name over the years. And if you looked at the DMV records and looked at the other times that he'd used the identity, Martinez was spelled with an S, it was Carlos, and it was – I think that's incorrect because one is a live real person and one is not. So it does matter. Let me put it to you this way. I understand what you're saying, but that's not what the government was arguing. This is Mr. Scott's argument in ER 175 in his closing argument. The 1028 case didn't involve the use of an identification card or document, but rather the defendant's use of a name and birth date. Correct. If there is a reasonable doubt in your mind that this information does not identify the person who came and sat on that chair, Mr. Martinez, the victim, then a not guilty verdict is your verdict, is a result. In rebuttal, the government argued at ER 179. And if that combination of name and date of birth is not the means of identification of the man, the victim who sat up here and testified for you, then I don't know what it is. That's not arguing that the defendant could be convicted of a jury if the jury concluded the defendant used the means of identification of someone other than Carlos Jesus Martinez, which is what you're suggesting the government argued. Can I read that sentence again? Are you getting that sentence? I'm sorry. The quote ended, and then I was going on. What did you quote? What the government said was, and if that combination of name and date of birth is not the means of identification of the man, the victim who sat up here. Who are you referring to by that combination? Or who was the attorney? I thought you were Mr. Scott. I think the import of this is that it doesn't matter whether or not you say that if the jury decides whether or not it was Martinez-Cascada that was said or just Martinez. Because when you look at all the circumstances, if you look at the combination with the birth date, what the defendant was doing at that point in time, on July 17th, when he was being confronted by Agent Nolan, was attempting to use the identification of the man who testified. The real man. Not somebody else. Not somebody fake. I hope that clarifies something. I just can't get over that Martinez-Cascada doesn't exist, so it does matter. It does. It's a very important fact if you say that that's what we were arguing, that you can convict if it was Martinez-Cascada. And we never argued that. We said you have to, you can only convict if you believe that the defendant used the means of identification of the gentleman who testified as the victim here, a real live person. Do you think that's consistent with the representations that you made, not you, the government made to the court and to the opposition that it had to be the name Carlos Jesus Martinez and that that was the charge? With respect, Your Honor, yes, I do. I do think it's consistent. Do you think it's consistent then to say it doesn't matter whether he used the other name? It doesn't matter for the purposes of deciding whether or not he's guilty of the charged offense. He's charged with using Martinez, the Martinez name. No, yeah, he's charged with using the name and telling that name to the officer on that date. That's right. And so don't you tell the jury that even if he used a different name, he's guilty? He's charged with using a means of identification. No, he's charged with using his – I know what the indictment says. I'm talking about what you represented to the court and the opposing lawyer. That's right. That he gave the name of Carlos Jesus Martinez. And that's what our theory was all along. Right, and then you tell the jury it doesn't matter which name he gave. As long as you conclude. Okay, whatever you do, the charge is that he gave one name. And you say that's our charge. That's what we're charging within the indictment, is giving name A. I agree with Your Honor. And then you tell the jury you can convict him whether he gave name A or name B. I do not believe this creates a fatal variance or a constructive amendment. I agree that the defense had a very good argument that the government had not proved its case. Well, the government not only didn't prove its case, it must have – it misrepresented to the court and the lawyer what the charge was. I really – I'm sorry. I just disagree with Your Honor on that. Well, I don't know how you can read what it said and then disagree. There was no intent to mislead anybody in this case. It's very clear what the charge was and what the evidence was necessary to convict. He said he just presided the scope of the charges. And then when he so did the scope of the charge was that he made a statement about a name to this officer. And the name was Carlos Jesus Martinez. That's the scope of the charge, the government said. Okay, I – I agree that there's a constructive amendment or a fatal variance. I don't know whether it's a constructive amendment, but – That's the argument, Your Honor. That's what we're here to talk about. Unless there are further questions. I'm sorry. Thank you. Is the argument for a button? You have to use the button. The Court has been gracious with time. I will just point out that it's not accurate. I'm sorry. What did you say? I was saying it's – I just wanted to correct the record to make clear that the government really did say you can convict on A or B. I think some of the answers suggested that wasn't what the government invited the jury to do. ER, page 151. No, they didn't say that. They said either name is enough if you believe that by that he was taking the identity of Jose – Jesus Martinez, whatever name he gave. Right. Some of the quotes are, but even if it was Martinez Cascada, even if that was in fact what happened, the defendants still used the same identity. And then later they said even if it was Martinez Cascada, still fundamentally, effectively identifies the same person. And there's a host there exactly. So ER 151, where are you from? Yes, I'm looking at ER page 151. Well, that's saying that whatever name it was, it identified the person in the indictment. Right. If you said I'm, you know, Herman Glutz and that meant to people Carlos Jesus Martinez, they're saying that if you think that name identifies Carlos Jesus Martinez, you know, go ahead. All right. What lines were you – I'm sorry. I was looking at – and I actually set this out on page 17 of my reply brief, but the first page is ER 151 is the first such example of that. I asked you for lines. I'm sorry. I'm turning to the page. Okay. Starting at line 21. But even if it was Carlos Jesus Martinez Cascada, even if that was in fact what happened, the name that was given, the defendants still used the same identity. Okay. And just page 17 of the reply brief sets forth a number of similar examples of saying Martinez Cascada, Martinez, either one you can convict on. Thank you for your time. Okay. Thank you. Case is already in session.
judges: Kozinski, Reinhardt, Wardlaw